IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| James R. Strong, #198044, | ) | C. A. No. 2:08-3133-MBS-RSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Jon Ozmint, SC Dept. of | ) | |
| Corrections; Bernard McKie, | ) | |
| Kirkland Warden; Michael | ) | |
| Joseph, Prison Guard; Gary | ) | |
| Lane, Prison Guard and | ) | |
| Captain; Kim Hill, Prison | ) | |
| Guard and Grievance | ) | |
| Coordinator; James Sleigh, | ) | |
| Prison Guard; Robert Ward, | ) | |
| Deputy Director of SCDC; | ) | |
| NFN Joyner, a Deputy Warden; | ) | |
| Linda J. Dunlap, SCDC Nurse | ) | |
| Practitioner; Eileen Delaney | ) | |
| Weiler, SCDC Nurse | ) | |
| Practitioner; Larry Kong, | ) | |
| American Amenities, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

This civil rights action with appended state law claims,

brought by a state prisoner proceeding <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u>

<u>pauperis</u> pursuant to 42 U.S.C. § 1983[1], is before the undersigned

---

[1] Every person who, under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory or the
District of Columbia, subjects, or causes to be subjected, any
citizen of Section 1983, titled a civil action for deprivation of
rights reads in relevant portion: the United States or other
person within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the Constitution and
laws, shall be liable to the party injured in an action at law,
suit in equity, or other proper proceeding for redress, except
that in any action brought against a judicial officer for an act

1

United States Magistrate Judge for a report and recommendation on defendants' motions for summary judgement. 28 U.S.C. §636 (b).

The plaintiff, James R. Strong, brought his 55 page[2] complaint on September 16, 2008, and sued Jon Ozmint, South Carolina Dept. of Corrections (SCDC); Bernard McKie, Kirkland Warden; Michael Joseph[3], Prison Guard; Kim Hill, Prison Guard and Grievance Coordinator; James Sleigh, Prison Guard; Robert Ward, Deputy Director of SCDC; NFN Joyner, a Deputy Warden; Linda J. Dunlap, SCDC Nurse Practitioner; Eileen Delaney Weiler, SCDC Nurse Practitioner; and Larry Kong, American Amenities, Inc. on September 16, 2008. Plaintiff alleges a plethora of conditions of confinement claims and seeks injunctive relief, various declaratory judgements, and millions of dollars in compensatory and punitive damages.

---

or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

[2] Plaintiff also filed 116 pages of unverified exhibits with his complaint.

[3] Michael Joseph and Eileen Delaney Weiler are named as defendants in this action, but neither has been served and neither has made an appearance in this action. "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998). Because Defendants Joseph and Weiler have not been served and have not waived service of process, this court lacks personal jurisdiction over them and they should be dismissed.

On January 19, 2009, Defendant Larry Kong filed a motion for summary judgment. On January 21, 2009, the plaintiff was provided a copy of the defendant's summary judgment motion and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff filed an opposition to the motion on February 26, 2009. On May 20, 2009, Defendants Ozmint, McKie, Dunlap, Lane, Hill, Sleigh, Ward, and Joyner filed motions for summary judgment. Plaintiff was provided copies of the motions and another Roseboro order on May 22, 2009. Plaintiff was granted an extension of time to oppose the motion and on July 29, 2009, he filed an opposition to the motions. Thereafter the defendants were granted an extension of time to file a reply and their reply was filed on August 25, 2009. Hence, it appears consideration of the motions is appropriate.

A review of the record and relevant case law reveals the defendants' motions should be granted.

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed.R.Civ.P. 56(c), a district court must enter judgment against a party who, "after adequate time for discovery ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

3

party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law," entry of summary judgment is mandated. Fed.R.Civ.P. 56(c). To avoid summary judgment on a defendant's motion, a plaintiff must produce evidence creating a genuine issue of material fact. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986). In determining whether a genuine issue of material fact is in dispute, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, at 255, 106 S.Ct. at 2513-14.

## DISCUSSION

The plaintiff is currently incarcerated within the South Carolina Department of Corrections (SCDC). The events underlying his complaint occurred while Plaintiff was confined to the Maximum Security Unity (MSU) of the Kirkland Correctional Institution in Columbia, South Carolina.

## Official Capacity Claims

To the extent Plaintiff's brought claims against all defendants in their "official capacities" for damages, those claims should fail. Suits against government authorities serving in their official capacity simply represent "another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55 (1978). The Supreme Court has held that the Eleventh Amendment bars a damages action against a State in federal court absent a waiver by the State or valid congressional override. Kentucky v. Graham, 473 U.S. 159, 169 (1985). This limitation "remains in effect when State officials are sued for damages in their official capacity." Id.; see also, Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("An unconsenting State is immune from suits brought in federal courts by her own citizens."); Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995) ("[Like the state itself, state officers acting in their official capacity are also entitled to Eleventh Amendment protection, because 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' and '[a]s such, it is no different from a suit against the State itself.'") (quoting Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)).

5

In the instant matter it is uncontested that all individuals, save Kong, sued for damages in their official capacities, serve as directors or employees of state agencies. Plaintiff's attempt to sue them in this manner is actually an attempt to sue the State of South Carolina and is barred by the Eleventh Amendment. Gray, 51 F.3d at 430. Thus, summary dismissal is appropriate for these defendants sued in their official capacity for damages stemming from the alleged violations of Plaintiff's constitutional rights.

Plaintiff's specific claims

Plaintiff divided his complaints into seven "issues" which will be reviewed seriatim.

In Plaintiff's first "issue" he alleges that he was assaulted on May 25, 2007, by Correctional Officer Michael Joseph and seeks recovery from Warden Bernard McKie and Correctional Officer James Sleigh on the theory that they knew of and disregarded an unreasonable risk of serious harm to the plaintiff by Joseph which disregard caused Joseph to assault the plaintiff.

Supervisory officials may be held liable only in limited circumstances for the constitutional injuries inflicted by their subordinates. See, Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984); Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994); Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). "[L]iability is not premised upon respondeat superior but upon a recognition that

supervisory indifference or tacit authorization of subordinates'
misconduct may be a causative factor in the constitutional
injuries they inflict on those committed to their care." Shaw,
13 F.3d at 798. The Fourth Circuit has set forth three
elements necessary to establish supervisory liability under 42
U.S.C. § 1983:

> (1) that the supervisor had actual or constructive
> knowledge that his subordinate was engaged in
> conduct that posed "a pervasive and unreasonable
> risk" of constitutional injury to citizens like
> the plaintiff;
>
> (2) that the supervisor's response to that
> knowledge was so inadequate as to show "deliberate
> indifference to or tacit authorization of the
> alleged offensive practices"; and
>
> (3) that there was an "affirmative causal link"
> between the supervisor's inaction and the
> particular constitutional injury suffered by the
> plaintiff.

Id. The Court in Slakan stated that "[h]e not only must
demonstrate that the prisoner faces a pervasive and unreasonable
risk of harm from some specified source, but he must show that
the supervisor's corrective inaction amounts to deliberate
indifference or 'tacit authorization of the offensive
[practices].'" Slakan, 737 F.2d at 373.

To meet the first element, a plaintiff must show "(1) the
supervisor's knowledge of (2) conduct engaged in by a subordinate
(3) where the conduct poses a pervasive and unreasonable
risk of constitutional injury to the plaintiff." Shaw, 13 F.3d

7

at 799. To establish a pervasive and unreasonable risk of harm, there must be evidence that the conduct was widespread or at least occurred on several different occasions and that the conduct engaged in by the subordinate posed an unreasonable risk of harm. To satisfy the second element, the Fourth Circuit explained that a plaintiff may establish deliberate indifference by showing "a supervisor's continued inaction in the face of documented widespread abuses." Id. The Fourth Circuit further held that causation was established when the plaintiff demonstrated an affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff.

A review of the record reveals that the plaintiff cannot carry his burden to show any of the required elements.

The plaintiff alleges that he alerted McKie and Sleigh to "the criminal actions of the Defendants" including Officer Joseph through grievances he submitted. See, Complaint, paras. 48-49. The plaintiff argues that these grievances gave McKie and Sleigh actual or constructive knowledge that Officer Joseph was engaged in conduct which posed a pervasive unreasonable risk of constitutional injury to the plaintiff. See, Complaint, para. 49.

However, a review of the 6 documents cited and relied upon by the plaintiff in his Complaint reflects that only one such grievance pre-dated the May 25, 2007, assault by Joseph. Complaint para. 48. That grievance is Grievance No. MSU-0065-07,

which was dated May 8, 2007, and was received by the grievance coordinator on May 16, 2007, and responded to on June 5, 2007, by grievance coordinator "SWL". Warden McKie affied that he had no knowledge that Joseph posed a threat to the plaintiff and there is no evidence that he or Sleigh possessed such knowledge.

In Grievance No. MSU-0065-07, the plaintiff complained that certain MSU officers, including Joseph, were bribing inmates to forego their out-of-cell recreation time in exchange for extra food trays. Plaintiff asked that he also be given extra food trays or that the practice be stopped. That is the only mention of Joseph. The plaintiff did not complain in that grievance that Joseph had made any threat to the plaintiff's safety. That grievance simply does not contain any information or allegations that would put a reasonable person on notice that Joseph posed a risk of harm to the plaintiff.[4]

None of the other grievances cited by the plaintiff were submitted prior to May 25, 2007, and at any rate, those grievances relate either to the May 25, 2007, incident itself or to other incidents where the plaintiff complained about correctional officers other than Joseph, such as grievance MSU-0062 which complained that non-defendant Officer Vincent Hampton brought contraband into the prison. In short, there is no

---

[4] Because of the allegation of guard misconduct the grievance was sent to the Division of Investigations which determined that the allegation could not be substantiated.

evidence that would lead a supervisory official to know that Joseph posed any type of serious threat to the plaintiff's safety. Likewise, there is no evidence that the Defendants McKie or Sleigh were deliberately indifferent to any serious threat posed by Joseph. In sum, the Defendants McKie and Sleigh cannot be held liable for Joseph's assault on May 25, 2007, and they are entitled to judgment as a matter of law.

Plaintiff's second "issue" is that he was kept in a cell "naked without anything at all, including all basic necessities" from April 12, 2007, to May 2, 2007. See, Complaint, para. 51. The plaintiff alleges that the Defendants McKie and Lane violated his Eighth Amendment rights by placing him into the control cell. The plaintiff alleges that Warden McKie ordered that he be placed in a control cell without justification and that Lane carried out these orders and continued to hold him there "after it was established that the plaintiff had done nothing at all" and the disciplinary charges had been dismissed. See, Complaint, paras. 51, 53, 54.

As an initial matter, Plaintiff's contention that he had done nothing at all wrong and that all disciplinary charges were dismissed is patently untrue. The record reflects that 2 charges of destruction of property and one charge for attempted escape were brought against him. One was for tearing up bed sheets, which were the property of the SCDC, and weaving them into rope.

10

The second was for putting a hole/crack in his cell wall large enough to allow him to pass items to another cell and for damaging the intercom in the cell as well as attempted escape. It was later learned that the plaintiff's cell was damaged prior to his placement there and that charge related to the condition of the cell and attempted escape was dismissed. Plaintiff received a third disciplinary charge for throwing feces at his cell walls and at the security camera i.e., defacing SCDC property. Plaintiff was found guilty of the remaining charges and was punished by the loss of good time credits and other penalties. Def. ex. D.

To the extent Plaintiff claims that he did nothing wrong at all and was wrongly convicted of these charges and seeks an award of damages, the claim is barred by Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In Heck, the United States Supreme Court determined that:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in

11

> favor of the plaintiff would necessarily imply the
> invalidity of his conviction or sentence; if it
> would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.  But if the
> district court determines that the plaintiff's
> action, even if successful, will not demonstrate
> the invalidity of any outstanding criminal
> judgment against the plaintiff, the action should
> be allowed to proceed, in the absence of some
> other bar to the suit.

512 U.S. at 486-87.

The holding of Heck has been applied to inmate disciplinary
hearings.  See, Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584,
In this case, to the extent Plaintiff alleges that he did nothing
wrong and seeks damages, such a finding would necessarily imply
the invalidity of his convictions and the deprivation of his
good-time credits.  Under the reasoning of Heck and Balisok,
Plaintiff is not entitled to recover damages under § 1983 because
he has not demonstrated that the disciplinary actions were
overturned.  These claims have not yet accrued and are not yet
cognizable in a §1983 action.  They should be dismissed without
prejudice to bringing them again once the disciplinary holdings
are overturned.

In regards to the complaint that the conditions of
confinement in MSU were unconstitutional, it is well settled that
to state an Eighth Amendment claim based on living conditions, a
plaintiff must show an objectively serious deprivation in the
sense that it violates contemporary notions of decency.  Rhodes

12

v. Chapman, 452 U.S. 337 (1981).  The Fourth Circuit has held
that "isolation from companionship, restriction on intellectual
stimulation, and prolonged inactivity, inescapable accompaniments
of segregated confinement, will not render that confinement
unconstitutional absent other illegitimate deprivations."  In re
Long Term Administrative Segregation of Inmates Designated as
Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999).

The affidavits of McKie and Lane indicate that the plaintiff
was placed in a control cell on April 12, 2007, following two
separate disciplinary charges involving destruction of state
property.  Shortly after the plaintiff was placed in the
control cell by order of Warden McKie, McKie left on two weeks of
annual leave. See, McKie Affidavit, para. 28.  The plaintiff was
not removed from the control cell until Warden McKie returned
from his leave.  The MSU staff would not remove him from the
control cell without Warden McKie's authority. See, Lane
Affidavit, para. 17.

The plaintiff does not allege, nor can he show, that he was
denied basic human needs such as food, shelter, sleep, light,
proper ventilation, heat, and medical care, while he was confined
in the control cell.  He alleges that he was denied access to his
property and was denied clothing and hygiene products.  Defendant
Lane affied that after 72 hours, if an inmate has not had any
disciplinary infractions, a mattress, jumpsuit, two sheets and a

blanket are provided to the inmate.  Further, hygiene packages
and legal materials are given to an inmate at his request then
returned to the security officers when an inmate is finished
using them, and no inmates in control cells are denied use of
hygiene items, showers and recreation times or access to legal
materials. See, Lane Affidavit, para. 16.

Assuming that Plaintiff's contention that he was denied
clothing and hygiene supplies is true, still he has not presented
evidence sufficient to show either that he has sustained a
serious or significant mental or physical injury as a result of
the challenged conditions or that the conditions have created an
unreasonable risk of serious damage to his future health as
required to make out his claim.  Strickler v. Waters, 989 F.2d
1375, 1380-1381 (4th Cir.), cert. denied, 510 U.S. 949, 1, 114
S.Ct. 393, ----, 126 L.Ed.2d 341, ---- (1993); Helling v.
McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

Plaintiff states that he was released from the control cell
on May 2, 2007.  A review of his records reveals that he made no
complaints of mental distress or physical injury while held in
the control cell or after.  He was seen by his social worker on
April 20, 2007, while in the control cell, and "reported that he
was doing OK."  The record from that visit states "no stressor
noted." See, Curry Affidavit, Ex. A.  During his time in the
control cell on May 1, 2007, he was seen by Dr. McPherson, DDS

14

for complaints of a sensitive tooth at which time his tooth was desensitized and a enameloplasty was performed. No complaints concerning his mental state, a lack of clothing, or inadequate hygiene, including dental hygiene, were noted.

After he was removed from the control cell, he was seen by mental health staff on May 21, 2007, and he voiced no concerns. See, Curry Affidavit, Ex. A. In fact, the Plaintiff made no complaints of mental distress, depression or anxiety, the damages which he asserted in his Complaint, until June 4, 2007, at which time he complained that he was feeling depressed and anxious and blamed not his confinement in the control cell, but rather the assault by Officer Joseph on May 25, 2007. See, Curry Affidavit, Ex. A. The plaintiff was seen by mental health personnel again on June 21, July 5, July 13, July 16, July 25, August 8, August 17, August 22, September 7, September 14, September 21, October 5, October 12, October 16 and October 22, and on none of those occasions did he mention or complain about his confinement in the control cell. See, Curry Affidavit, Ex. A. His mental health consults continued, and at none of these times did he complain about feeling depressed or anxious due to any deprivations or restrictions while in the control cell from April 12 to May 2, 2007.

Here, Plaintiff has not satisfied the objective component, i.e., he has not demonstrated an "extreme" deprivation. Rish v.

15

Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). He has not shown facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir.), *cert. denied*, 510 U.S. 949 (1993); Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). Plaintiff has not carried his burden and as a result summary judgment should be granted to the defendants.

Plaintiff's third "issue" is his contention that he did not receive constitutionally adequate medical care following the May 25, 2007, assault. Plaintiff seeks to hold defendants McKie, Lane, Ward, Hill, Joyner, Delany, and Dunlap liable.

With respect to claims regarding medical care, a prisoner in a § 1983 case "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" in order to proceed. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Supreme Court in Estelle pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a [constitutional] violation." Id. at 105; see also, Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical

16

treatment, it does not guarantee to a prisoner the treatment of his choice"). In addition, although the provision of medical care by prison or jail officials is not discretionary, the type and amount of medical treatment is discretionary. See, Brown v. Thompson, 868 F.Supp. 326 & n. 2 (S.D.Ga. 1994); Hoffman v. Tuten, 446 F.Supp.2d 455, 471 (D.S.C. 2006). Hence, the proper inquiry is whether the prison provided any treatment. Whether the prisoner agrees or disagrees with the treatment is irrelevant:

> Even though the plaintiff and the defendants have a differing opinion as to the proper treatment to be received by plaintiff, this does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976). Therefore, the key question in this case is whether the defendants have provided plaintiff with some kind of treatment, regardless of whether it is what plaintiff desires.

Lamb v. Maschner, 633 F. Supp. 351, 353 (D. Kansas. 1986).

According to the plaintiff's medical records for the relevant time period (Ex. Affidavit of Donna Curry), the plaintiff was immediately seen by Nurse Practitioner Eileen Delaney on May 25, 2007, following the incident with Officer Joseph. The plaintiff complained of neck pain. No bruising or abrasions were noted, and Plaintiff was provided pain medication and a cervical collar.

Thereafter, Plaintiff was seen by medical providers no less than nineteen times between May 25 and August 2, 2007. In that

17

time, he was treated for complaints of neck pain during five of those visits.  He was provided a cervical collar and had xrays of his neck taken on June 4, 2007.  Those xrays, which were read by a private radiologist, Dr. Alan Kantsiper, showed only some minimal degenerative changes unrelated to the May 25, 2007, incident.  There was no evidence of a fracture or other acute injury.

Nurse Delaney requested an orthopaedic consult for the plaintiff.  That request was granted, and he was seen by Dr. David Koon and Dr. Carlos Kugler on August 20, 2007.  Additional xrays taken on that date were negative.  The radiological report states:  "Soft tissues are normal. ... The vertebral bodies are uniform in height.  Intervertebral disc spaces are uniform. There is no evidence of fracture or subluxation."  While the plaintiff alleges that he did not receive appropriate medical care following the May 25, 2007, incident, the evidence indicates that he received a substantial amount of treatment for his neck injury.

Finally, it must be noted that the Fourth Circuit has held that corrections administrators such as the warden, deputy warden, and deputy director should be entitled to rely on their health care providers' expertise.  Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).  As here, in Miltier, the Fourth Circuit held that there was no evidence to support a finding that corrections

18

officials tacitly authorized their subordinate medical personnel to provide inadequate medical care. Id. Summary judgment should be granted to the defendants.

The plaintiff's fourth and fifth "issue[s]" are that Defendant Kim Hill, an SCDC grievance coordinator, and other defendants, violated his constitutional rights by being "downright incompetent" in processing his grievances and/or failing to do so within the time frames outlined in the SCDC Grievance Policy. The plaintiff also made repeated allegations throughout his complaint regarding the responses to various of his grievances prepared by defendants McKie, Sligh, and Joyner. He contends that these defendants failed to properly address his grievances in certain instances. He also takes exception to the responses he received to certain grievances.

A review of the case law and relevant statutes reveals that, even taken as true, none of these acts give rise to any constitutional deprivation. As a result, the defendants should be granted judgment as a matter of law.

The Fourth Circuit Court of Appeals held in Adams v. Rice, 40 F.3d 72 (4th Cir. 1994), that, "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily adopted by a state." 40 F.2d at 75; see also, Mitchell v. Murray, 856 F. Supp. 289, 294 (E.D.Va. 1994) ("plaintiff has no constitutionally protected interest in filing

a grievance"); <u>Hunter v. Rainwater</u>, 2007 WL 2823009 (D.S.C. 2007) ("with respect to any complaints concerning the operation of the grievance system itself, as opposed to the substantive claims contained his grievances, that is not a claim cognizable under 42 U.S.C. § 1983").

Thus, the plaintiff's claim that Hill failed to process or respond to various grievances simply does not state a federal constitutional claim. Similarly, the plaintiff's complaints concerning the manner in which McKie, Sligh, and Joyner responded to his grievances and their denial of certain grievances does not raise a valid constitutional claim.

In <u>Calhoun v. Botos</u>, 2009 WL 612348 (E.D. Mich. 2009), for example, the district court held:

> The prison officials' rejection of plaintiff's grievances, standing alone, does not amount to deliberate indifference or otherwise establish a constitutional violation. The Constitution does not require a state to establish a prison grievance system, and thus the denial of, or failure to consider, a grievance does not state a constitutional claim under § 1983 or render the reviewing official personally involved in the deprivation alleged in the grievance.

2009 WL 612348 at 4.

Still, Plaintiff argues that the defendants failed to follow SCDC's own policies and procedures in handling grievances as well as in a myriad of other settings. That argument is unavailing. It is well settled that "[a]n agency's violation of its regulations is not unconstitutional unless the regulations are

necessary to afford due process." Bowens v. North Carolina
Department of Human Resources, 710 F.2d 1015 (4th Cir. 1983). See
also, Garraghty v. Commonwealth of Virginia, 52 F.3d 1274 (4th
Cir. 1995). In United States v. Caceres, 440 U.S. 741 (1979),
the United States Supreme Court determined that violations of an
agency's own guidelines does not necessarily give rise to a
constitutional cause of action. The departure from agency
guidelines or regulations will only be actionable under 42 U.S.C.
§ 1983 when compliance with the guideline or regulation is
mandated by the Constitution.

In sum, Plaintiff has no constitutionally protected right to
access to a grievance system. Likewise, there is no
constitutionally protected interest in the particular procedures
and policies regarding such a system. Plaintiff's claims against
the Defendants Hill, McKie, Sligh and Joyner do not rise to the
level of a constitutional deprivation and should be dismissed.

In his sixth "issue", Plaintiff alleges a claim against SCDC
and Larry Kong of American Amenities, Inc. because the "spring
fresh" toothpaste and deodorant provided by American Amenities
which he received in his inmate hygiene packages allegedly
contain dangerous chemicals that cause him allergic reactions.
He asserts violations of numerous constitutionally protected
rights.

This claim should be dismissed. As to Larry Kong of American Amenities, Inc., actions taken by a private individual or corporation are generally not deemed to be the actions of a state actor for § 1983 purposes unless the state has so directed or dominated the activity that it functionally becomes a state action. Debauche v. Trani, 191 F.3d 499, 506-07 (4th Cir. 1999), *cert. denied*, 529 U.S. 1033, 120 S.Ct. 1451 (2000). A private actor may be held liable under § 1983 if it performs a private action "because of a state-enforced custom," Adickes v. S.H. Kress & Co., 398 U.S. 144, 171, 90 S.Ct. 1598 (1970), or if "the function performed [is] traditionally the exclusive prerogative of the state." United Auto Workers v. Gaston Festivals, Inc., 43 F.3d 902, 906 (4th Cir. 1995). The Fourth Circuit has outlined the situations in which a private actor may be said to be a state actor for § 1983 purposes:

> A handful of contexts have been identified in which we can be confident that the conduct of an ostensibly private actor is under color of law for purposes of section 1983. The first exists where, "'in light of all the circumstances,' ... the Government did more than adopt a passive position toward the underlying private conduct." In that situation, a "private party should be deemed an agent or instrumentality of the Government." Second, if the state delegates its obligations to a private actors, the acts conducted in pursuit of those delegated obligations are under color of law. Third, "[o]ne of the paradigmatic means by which a private party becomes subject to section 1983 is through the government's conferral upon that party of what is, at core, sovereign power." In other words, a private actor is responsible as a state actor if "the function performed [is]

22

> traditionally the exclusive prerogative of the
> State." Fourth, "private use of ... challenged
> state procedures with the help of state officials
> constitutes state action."

Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 342

(4th Cir. 2000) (citations omitted).

Here, taking all of Plaintiff's allegations as true, they do not fall under any of these four categories. The state government's conduct here was clearly passive; all SCDC did was buy toothpaste and deodorant from the defendant.[5] Likewise, Plaintiff has not alleged that the government delegated any obligations to Defendant, as it is traditionally not an obligation of the government to manufacture and sell toothpaste and deodorant. Nor did the state confer any sort of sovereign power upon the defendant. Finally, Plaintiff has not alleged that the defendant made use of any sort of challenged procedures with the assistance of SCDC.

Since Kong's actions do not fall under any of the four categories of private conduct recognized in Goldstein that are transformed into state conduct for § 1983 purposes, it appears that under federal law he is not a state actors and may therefore not be the subject of Plaintiff's § 1983 suit. At least one federal court has held that private actors may not be held liable

---

[5] Plaintiff often argues this claim as if he had brought suit against two defendants: Larry Kong and American Amenities, Inc. He did not name or serve the separate legal entity American Amenities, Inc. and that corporation is not before the court.

under § 1983 simply because they provide certain goods to correctional institutions to be distributed to inmates. <u>Plummer v. Valdez</u>, 2006 WL 2713784 at 2 (N.D.Tex. Sept. 21, 2006).

Additionally, Plaintiff named SCDC as a defendant in this cause of action and sought $150,000.00 in damages from SCDC. Complaint ¶ 93. SCDC is not a proper party amenable to suit under 42 U.S.C. § 1983. <u>Will v. Michigan State Police</u>, 491 U.S. 58 (1989). The Supreme Court in <u>Will</u> held that the state or state agencies are not "persons" amenable to suit under 42 U.S.C. § 1983. In addition, SCDC is entitled to Eleventh Amendment immunity. The Eleventh Amendment prohibits a federal court from entertaining an action where a defendant is a state or state agency. <u>Alabama v. Pugh</u>, 438 U.S. 781 (1978). SCDC simply may not be sued for money damages in federal court. For this reason alone, the plaintiff's claim against SCDC regarding allegedly contaminated toothpaste and deodorant should be dismissed.

Plaintiff's seventh and final "issue" is not a separate cause of action but instead is argument and exhibits to show that he has exhausted his administrative remedies as required by the Prison Litigation and Reform Act. However, the defendants have not asserted this defense, and no argument or proof is required from the plaintiff on exhaustion.

## Additional grounds for dismissal

As discussed supra, to the extent the plaintiff sued any of the prison personnel in their official capacities, they should be dismissed since they are not "persons" who may be sued under § 1983. <u>Will v. Michigan State Police</u>, 491 U.S. 58 (1989).

To the extent the plaintiff sued any of the prison personnel because of what subordinate personnel allegedly did, those claims should be dismissed because vicarious liability theories of recovery are inapplicable in civil rights actions. <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).

To the extent the plaintiff seeks to impose liability in his civil rights claims under § 1983 based on alleged violations of state law or prison rules and regulations without more, those claims should be dismissed. <u>Weller v. Department of Social Servs.</u>, 901 F.2d 387392, (4th Cir. 1990) (state law); <u>Riccio v. County of Fairfax</u>, 907 F.2d 1459, 1466 (4th Cir. 1990) (procedural rules).

To the extent Plaintiff seeks damages for the negligent loss of property, Complaint relief sought #14, no § 1983 remedy is available because due process concerns are met where there is an adequate state remedy available. <u>Daniels v. Williams</u>, 474 U.S. 327 (1986).

To the extent Plaintiff seeks to allege that any defendant violated provisions of the Religious Land Use and

Institutionalized Persons Act or that his civil rights were violated because he allegedly was not permitted to receive outside publications in MSU, those claims fail for because he has not stated a claim and not provided any evidentiary support.[6]

### Action should be denominated a strike

It also appears that this action should be denominated as a "strike" within the meaning of the Prison Litigation and Reform Act (PLRA), 28 U.S.C. § 1915(d).

The federal in forma pauperis statute under which the plaintiff is proceeding in the instant case insures that indigent litigants have meaningful access to the federal courts. 28 U.S.C. § 1915. However, to prevent indigent litigants from filing frivolous lawsuits, the statute authorizes courts to dismiss the suit if it is frivolous or malicious. 28 U.S.C. § 1915(d). A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Federal courts have the power to dismiss both claims based on meritless legal theories and claims with clearly baseless factual contentions. Id. at 327. Examples of meritless legal theories are claims where "it is clear the defendants are immune from suit, and claims of infringement of a legal interest which clearly does not exist...". Id. at 328.

---

[6] Plaintiff added these potential causes of action in a laundry list of why he is suing at the beginning of his complaint before he presented his "issues" which do not mention them.

This Court may take judicial notice that the plaintiff has previously filed at least three (3) cases[7] in forma pauperis and has failed to prevail in any of them. In his most recent case, 2:03-cv-2256, he named 28 defendants, 26 of whom were SCDC officials, and 2 of whom were officials of the South Carolina Law Enforcement Division (SLED). In that case Plaintiff lost on issues and claims he brings again in the instant action. He sued Defendants in their official capacities, as here. He complained that his grievances were improperly processed. He also argued that as a result of his grievances, the defendant supervisory officials were on notice of all conditions and danger about which he complained and therefore, according to the plaintiff, liable as personal participants in causing the conditions and assaults about which he complained. Like the instant complaint, he also complained that he was subjected to an unjustified and prolonged solitary confinement where he was "denied clothing, access to the courts, and basic necessities needed to keep up his health and hygiene." Complaint, 24 ¶ 77. Further, he complained certain things were violative of prison rules, as he does in this suit.

---

[7] Plaintiff was one of 23 plaintiffs in another civil rights case, 9:03-cv-790, brought against 27 officers of the SCDC. The plaintiffs' motion for class certification was denied and Plaintiff was dismissed without prejudice in July 2003. He also brought an action against the Director of the SCDC on June 24, 2004, but that action was dismissed by Judge Harwell because the plaintiff did not obey a court order to bring the action into proper form. 2:04-cv-1837.

He also sought to impose liability because he was not allowed to receive outside publications.

As here, Plaintiff moved for a temporary restraining order and a preliminary injunction. Both were denied. Plaintiff filed an interlocutory appeal to the Fourth Circuit Court of Appeals which dismissed his appeal of the denial of a temporary restraining order because such appeals are not permitted and affirmed the denial of a preliminary injunction for reasons relied upon by the Honorable Margaret Seymour, United State District Court Judge. Plaintiff also appealed Judge Seymour's order granting summary judgment to most defendants on most claims, which appeal was dismissed by the Fourth Circuit for lack of jurisdiction. Plaintiff then dismissed six of the nine remaining defendants in the action. The matter against the three remaining defendants for claims of excessive force was tried before a jury on September 8, 2008, which jury found for all defendants. Plaintiff noticed an appeal to the Fourth Circuit and that appeal is still pending.

In the instant action, the plaintiff duplicated much of his prior claims which were based on meritless legal theories and claims with clearly baseless factual contentions. Examples of meritless legal theories are claims where "it is clear the defendants are immune from suit, and claims of infringement of a legal interest which clearly does not exist... ." Neitzke v.

Williams, 490 U.S. 319, 325-327 (1989). As such, this action should be dismissed and deemed a strike pursuant to the court's authority under § 1915(g).

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that Defendants Joseph and Weiler be dismissed from the action for want of personal jurisdiction. Further, the defendants' motion for summary judgment should be granted, and this action be denominated a "strike" within the meaning of the Prison Litigation and Reform Act. Lastly, it is recommended that the court exercise its discretion to decline supplemental jurisdiction pursuant to 28 U.S.C. § 67(c)(3) over claims brought by the plaintiff pursuant to South Carolina law, and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

August 31, 2009

29

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).